## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

GLADYS MENDOZA, personal
representative of ELIAS
MENDOZA,

        Plaintiff,

    v.

INSPIRA MEDICAL CENTER
VINELAND, SOUTH JERSEY HEALTH
CARE, INSPIRA HEALTH NETWORK,
INC., ANDREW ZINN, M.D., THE
HEART HOUSE, NAEEM M. AMIN,
M.D., and KIDNEY AND
HYPERTENSION SPECIALISTS,
P.A.

        Defendants.

Civil No. 16-1337 (NLH/KMW)

**OPINION**

---

**APPEARANCES:**

JAMES R. RADMORE
TWO PENN CENTER, SUITE 312
1500 JFK BOULEVARD
PHILADELPHIA, PA 19102
    *Attorney for Plaintiff Gladys Mendoza.*

THOMAS J HEAVEY
GROSSMAN & HEAVEY
1608 HIGHWAY 88 WEST, SUITE 200
BRICK, NJ 08724
    *Attorney for Defendants Inspira Medical Center Vineland,*
*South Jersey Health Care, and Inspira Health Network, Inc.*

DAVID P. BRIGHAM
STAHL & DELAURENTIS
10 E. CLEMENTS BRIDGE ROAD
RUNNEMEDE, NJ 08078
    *Attorney for Andrew Zinn, M.D. and The Heart House.*

**HILLMAN**, District Judge

This is a medical malpractice action against a hospital and a cardiologist for their care of Elias Mendoza in March 2014. Presently before the Court are four motions: (1) Inspira Defendants'[1] Motion to Preclude the Expert Testimony of Drs. Bruce D. Charash and T. Anthony Cumbo ("Motion to Preclude"), (2) Plaintiff's Partial Motion for Summary Judgment as to IHN, (3) Inspira Defendants' Cross-Motion to Amend the Caption of the Amended Complaint ("Motion to Amend"), and (4) Andrew Zinn, M.D. and The Heart House's (collectively, the "Cardiology Defendants") Motion for Summary Judgment.

For the following reasons, the Motion to Preclude will be granted, in part, and denied, without prejudice, in part; Plaintiff's Partial Motion for Summary Judgment will be denied, without prejudice; the Motion to Amend will be denied, in part, with prejudice and in part, without prejudice; and the Cardiology Defendants' Motion for Summary Judgment will be denied, without prejudice.

## BACKGROUND

The Court takes its facts from Plaintiff's Amended Complaint, the parties' various filings, and the procedural

---

[1] The Inspira Defendants include Inspira Medical Center Vineland, South Jersey Health Care ("SJHC"), and Inspira Health Network, Inc. ("IHN"). The Inspira Defendants claim that the real party in interest is Inspira Medical Center, Inc. ("IMC").

history of the case.  On March 11, 2014, Elias Mendoza went to the Emergency Room at the Inspira Medical Center in Vineland, New Jersey complaining of shortness of breath and admitted to the Intensive Care Unit.  According to the expert reports[2] of Bruce D. Charash, M.D., F.A.C.C. (the "Charash Reports"), Mr. Mendoza was visiting New Jersey from Georgia, and had proactively scheduled dialysis sessions during the time he was in New Jersey.

Mr. Mendoza was not only suffering from end-stage renal disease (requiring the previously mentioned dialysis) but also insulin dependent diabetes mellitus, coronary artery disease, and congestive heart failure.  It appears that a chest x-ray taken that day showed a fluid overload in Mr. Mendoza's lungs.  Mr. Mendoza was given a cardiology consultation by Zinn and a nephrology consultation by Naeem M. Amin, M.D.

On March 15, 2014, Mr. Mendoza suffered both a respiratory and cardiac arrest which led to a permanent anoxic brain injury caused by lack of oxygen.  Mr. Mendoza passed away less than a year later from acute respiratory failure, stemming from a cardiac arrest, and coronary artery disease.  Plaintiff asserts, as Mr. Mendoza's personal representative, that Mr. Mendoza's

---

[2] Charash prepared two reports for this case, one on July 23, 2018 and one on October 10 or 15, 2018.

allegedly negligent treatment at the Inspira Medical Center in Vineland was a contributing factor to his death.

Plaintiff filed a complaint on March 9, 2016. Plaintiff filed an amended complaint on March 22, 2016. The Amended Complaint asserts claims against three sets of Defendants, the Inspira Defendants and Cardiology Defendants mentioned supra, as well as Amin and the Kidney and Hypertension Specialists, P.A. (the "Nephrology Defendants"). Plaintiff asserts direct liability claims of negligence against the Inspira Defendants, Zinn, and Amin. Plaintiff also asserts vicarious liability claims of negligence against the Inspira Defendants, The Heart House, and the Kidney and Hypertension Specialists, P.A.

An Affidavit of Merit, as required by New Jersey law, was filed with the Court on April 27, 2016 by Plaintiff's expert Charash. This was challenged in August 2016 Motions for Summary Judgment brought by the Nephrology Defendants and IMC. After full briefing, this Court decided these motions on March 30, 2017. The Court granted Defendants' Motions for Summary Judgment. Plaintiff's claims against Nephrology Defendants were dismissed, with prejudice, for failure to comply with the Affidavit of Merit requirements. The same reasoning applied to IMC's Partial Motion for Summary Judgment, which focused solely on the direct claims of negligence brought against IMC.

Of central importance to the present motions was the
contours of the Court's decision as to the Inspira Defendants.
The Court notes here and discusses further _infra_ that the
Partial Motion for Summary Judgment discussed _supra_ was brought
by IMC, at least on its face.  The Court also notes that the
Inspira Defendants answer to Plaintiff's Amended Complaint
stated that the Inspira Defendants were wrongly named, and that
the only party correctly before this Court was IMC, which
operated the hospital at-issue in Vineland, New Jersey.

Plaintiff timely filed a Motion for Reconsideration, or in
the alternative, a motion to certify the March 30, 2017 Order
for interlocutory appeal.  After full briefing, Plaintiff's
requests were denied by this Court on November 13, 2017.
Discovery continued.

On September 6, 2018, the Inspira Defendants filed the
pending Motion to Preclude.  On October 10, 2018, Plaintiff
filed a Partial Motion for Summary Judgment solely against IHN.
On November 1, 2018, the Inspira Defendants filed a cross-
motion, the Motion to Amend, and response.  On January 11, 2019,
Cardiology Defendants filed their Motion for Summary Judgment.
On January 30, 2019, Plaintiff filed a letter requesting leave
to file an attached proposed sur-reply brief to the Cardiology
Defendants' Motion for Summary Judgment.  Cardiology Defendants

filed no response.  Accordingly, all motions have been fully briefed and are ripe for adjudication.

## ANALYSIS

**A.  Subject Matter Jurisdiction**

This Court possesses subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332.

**B.  Motion to Preclude Expert Testimony**

IMC[3] has moved to preclude plaintiff's experts, Dr. Charash and Dr. Cumbo, from testifying as to any direct or vicarious liability claims against IMC that have already been dismissed by this Court.  IMC argues that all direct claims against it have been dismissed and that only one claim of vicarious liability – based on the actions of Zinn and the Heart House – remains. Therefore, any expert testimony relevant only to direct claims or the vicarious liability claim based on the Nephrology Defendants conduct is irrelevant and should be barred.

To provide appropriate context, the Court notes here that the dismissal of the claims discussed _supra_ was based on the Affidavit of Merit Statute.  N.J. STAT. ANN. §§ 2A:53A-26-29.  The

---

[3] IMC has been previously defined as "incorrectly pled on Complaint as 'Inspira Medical Center Vineland', 'South Jersey Health Care', and 'Inspira Health Network, Inc.'"  (IMC Answer 1.)  The Court will discuss this in more detail, _infra_. Initially, the Court notes that it is IMC who filed the instant motion, although in its reply brief, IMC counsel specifies it is on behalf of all Inspira Defendants.

direct and vicarious (to the extent they were asserted)

liability claims based on the Nephrology Defendants actions were

dismissed because Plaintiff did not present an expert within the

appropriate specialty who could provide an affidavit of merit.

The direct and vicarious (to the extent they were asserted)

liability claims based on inadequate staffing were also

dismissed because Plaintiff did not present an expert within the

appropriate specialty who could provide an affidavit of merit.

This motion was filed by and granted for IMC.[4]

Complicating any decision on this motion is Plaintiff's

opposition. Plaintiff does not disagree that using this expert

testimony against IMC would be improper based on the Court's

previous rulings. But, Plaintiff asserts two other arguments:

(1) IMC's previous partial motion for summary judgment was not

brought on behalf of Inspira Health Network, Inc. ("IHN") and

(2) the expert testimony may be used to support a claim based on

inadequate staffing against IHN because IHN does not fall under

the Affidavit of Merit Statute.

Which Defendants filed what motions and are the

beneficiaries of the relief previously granted by this Court is

a threshold question. The answer, this Court finds, is unclear.

_____

[4] As discussed more fully <u>infra</u>, the Court does not here decide
whether IMC's filings or this Court's Opinion and Order were
limited to IMC or were actually applicable to all Inspira
Defendants.

It is undeniable that IMC has represented to Plaintiff on multiple occasions that Plaintiff's caption was incorrect. The first such occasion of record is IMC's Answer. (IMC Answer 1 (defining IMC as "incorrectly pled on Complaint as 'Inspira Medical Center Vineland', 'South Jersey Health Care', and 'Inspira Health Network, Inc'").) It also appears that IMC stated in an interrogatory response on September 7, 2016 that the Inspira Defendants' correct corporate name is IMC. (IMC Reply Br., Ex. A ¶ 1.) Other instances likely exist, but these are the most important examples cited by Plaintiff.

On the other hand, Plaintiff is correct that IMC's briefing has not been precise. The previous motion for partial summary judgment did not state whether it was brought on behalf of Inspira Defendants or just IMC. While one may assume, based on IMC's previous representations, that it was, it is not clear from the face of the papers. This Court's corresponding Opinion and Order only explicitly referenced IMC. Even IMC's instant motion was not clearly brought on behalf of all Inspira Defendants until IMC clarified its position in its reply brief.[5]

---

[5] If it is Plaintiff's position that it has always thought IHN was not subject to this Court's Opinion and Order and that summary judgment is appropriate, Plaintiff should set forth the undisputed facts and case law which cogently explain why IHN is liable to Plaintiff. Moreover, absent compelling circumstances to which this Court is presently unaware, the Court will not permit any further discovery on this issue.

Moreover, IMC cannot state, unilaterally, which entities Plaintiff intended to sue or not to sue. Plaintiff is the master of his own complaint. <u>Judon v. Travelers Prop. Cas. Co. of Am.</u>, 773 F.3d 495, 505 (3d Cir. 2014). While there are many situations in which Defendants' informal response may be appropriate (e.g., misspelling of a name), it is not appropriate here.[6] IMC does not state that IHN is not a real entity or that its name has been misspelled. It merely states Plaintiff should have solely sued IMC. Saying it does not make it so.

Plaintiff has been similarly imprecise in its briefing, failing to bring up this issue in opposition briefs or in its motion for reconsideration. Plaintiff has been silent on this issue until over a year and a half after the facts animating this argument arose. Ultimately, this Court does not here decide who has the better of the argument.

Clearly, precision has been lacking by both Plaintiff and IMC. Since it appears Plaintiff does not disagree, this Court will bar expert testimony – except on the issue of cardiology – against IMC. The Court's decisions on this point and the parties' respective positions place this issue beyond dispute.

---

[6] That is not to say it was wholly inappropriate here. Based on the facts provided by the parties, IMC is incorrectly pled as "Inspira Medical Center Vineland." Proper procedure would require Plaintiff to amend their caption to reflect this error.

9

Accordingly, on those grounds, the Court will grant the Motion to Preclude as to IMC.

However, that is not the case as to IHN (or even to South Jersey Health Care ("SJHC")).  For that reason, the Court will deny this part of Inspira Defendants' Motion to Preclude, without prejudice.  Instead, the lack of clarity from the parties necessitates, unfortunately, more briefing.  Now that the issues have come into focus, the Court will direct the parties specifically on what is required.  Counsel for Inspira Defendants may file a motion for summary judgment showing why – as a matter of law, and, if applicable, as a matter of undisputed fact – direct or vicarious liability claims must be dismissed against IHN and SJHC, to the same extent they were dismissed against IMC.[7]  Specifically, Inspira Defendants should consider legal arguments beyond those of preclusion.[8]  In this motion, counsel will also fully brief the issue of whether the

---

[7] This does not limit the grounds on which Inspira Defendants may move.  If they believe another substantive ground exists that may dismiss all claims or less than all claims, those grounds may also be asserted.  Separately, the Court encourages the parties to consider a stipulation of dismissal as to SJHC to mirror the status of IMC.  It appears neither Plaintiff nor Inspira Defendants believe SJHC is central to this case.

[8] Because this is a denial without prejudice the Court does not decide the merits of IMC's arguments.  IMC is free to raise these arguments once again.  But, this Court believes more fulsome briefing on what it finds to be the other relevant issues at stake is also required.

Affidavit of Merit statute applies to IHN or SJHC.  Plaintiff
will respond appropriately.

**C.   Plaintiff's Motion for Partial Summary Judgment
against IHN and Inspira Defendant's Cross-Motion to
Amend**

Obviously, the Court's decision <u>supra</u> affects other pending
motions.  Plaintiff has filed a Partial Motion for Summary
Judgment against IHN only.  The basis: IHN was not subject to
this Court's March 30, 2018 Opinion and Order, only Plaintiff
has provided expert testimony as to inadequate staffing, and,
because expert testimony is required as a matter of law,
Plaintiff's Partial Motion for Summary Judgment must be granted.
The basis for Plaintiff's Partial Motion for Summary Judgment,
therefore, is a particular interpretation of IMC's Partial
Motion for Summary Judgment and this Court's March 30, 2018
Order and Opinion granting it.  Because the Court will not
decide that issue until the briefing described <u>supra</u> has been
submitted, this Court will also deny Plaintiff's Partial Motion
for Summary Judgment, without prejudice.[9]

Inspira Defendants have also filed a Cross-Motion to Amend
the Caption.  Inspira Defendants ask this Court to amend the
caption of Plaintiff's Amended Complaint to only include IMC and

_____

[9] As with this Court's decision on IMC's Motion to Preclude, this
Court notes explicitly that Plaintiff may reargue these points,
but must also address the additional substantive issues noted by
the Court.

delete all reference to IHN and SJHC.  This will be denied, with prejudice, in part, and without prejudice, in part.  Inspira Defendants may not re-file this type of motion as it is not contemplated by the rules.  Federal Rule of Civil Procedure 15, which controls the amendment of pleadings only allows a party to "amend <u>its</u> pleading."  FED. R. CIV. P. 15(a)(1), (a)(2).  Inspira Defendants may not amend Plaintiff's Amended Complaint, as Rule 15 only allows amendment of a party's own pleadings.[10] Accordingly, this Court will deny this Cross-Motion to Amend with prejudice on these grounds.  The Court does not intend this decision to be one on the merits, so to the extent Inspira Defendants present substantive argument, that argument is dismissed without prejudice and may be re-argued in subsequent motions.

### D.    Motion for Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any,' . . . demonstrate the absence of a genuine

---

[10] The Court notes the proper motion at the outset of this case – which Inspira Defendants never filed – would have been a motion to dismiss, a motion for judgment on the pleadings, or a motion for summary judgment.  Absent consent, it is a dispositive motion, not amendment, which is a defendant's tool to shape a plaintiff's pleadings into proper form by obtaining a ruling as to which defendants are subject to suit.

issue of material fact" and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citing FED. R. CIV. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (citing Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."); see Singletary v. Pa.

Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing" — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." (citing Celotex, 477 U.S. at 325)).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. A "party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . . pleading[s].'" Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). For "the non-moving party[] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Cooper v. Sniezek, 418 F. App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at 322). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 257.

**E.    Motion for Summary Judgment – Cardiology Defendants[11]**

The Cardiology Defendants argue summary judgment should be granted in their favor because Plaintiff cannot establish through expert testimony the requisite elements of medical malpractice.  Specifically, the Cardiology Defendants argue that neither of Plaintiff's expert witnesses, Dr. Cumbo and Dr. Charash, offers any expert opinion as to medical malpractice of the Cardiology Defendants.  Plaintiff argues, through citing to statements in the Charash Reports and at Charash's deposition that Charash did actually opine on the Cardiology Defendants deviations from the accepted medical standard.

To prove medical malpractice, a plaintiff must prove, through expert testimony: "(1) the applicable standard of care . . . ; (2) a deviation from that standard of care . . . ; and (3) that the deviation proximately caused the injury . . . ." Gardner v. Pawliw, 696 A.2d 599, 608 (N.J. 1997) (citations omitted).  In other words, the law imposes upon a doctor:

> the duty to exercise in the treatment of his patient the
> degree of care, knowledge and skill ordinarily possessed
> and exercised in similar situations by the average
> member of the profession practicing in his field.
> Failure to have and to use such skill and care toward

---

[11] The Court notes that Plaintiff also filed a sur-reply brief. Cardiology Defendants did not file any opposition to this brief being filed and considered by the Court.  For that reason, the Court will order that the sur-reply brief by filed and will consider those arguments – to the extent they are different than argued in Plaintiff's response – in deciding Cardiology Defendants' Motion for Summary Judgment.

the patient as a result of which injury or damage results
constitutes negligence.

Schueler v. Strelinger, 204 A.2d 577, 584 (N.J. 1964).

"Absent competent expert proof of these three elements, the
case is not sufficient for determination by the jury."
Rosenberg v. Tavorath, 800 A.2d 216, 225 (N.J. Super. Ct. App.
Div. 2002) (citing Sanzari v. Rosenfeld, 167 A.2d 625, 628 (N.J.
1961)).  It is to this aspect that this Court now turns.

First, the Court considers the issue of whether Plaintiff
has provided expert testimony on the appropriate level of care.
Plaintiff has provided such testimony.  In the July 23, 2018
Charash Report, Dr. Charash opines that "the standard of care
required treating Mr. Mendoza as if he could be impacted by an
acute coronary event, which further placed him at risk for acute
decompensation."  (Pl.'s Opp'n Br., Ex. C 3.)  In Dr. Charash's
deposition, he states: "[f]rom a cardiac point of view this
patient was drowning and a cardiologist would have the
responsibility to protect the airway and to get the patient
dialyzed."  (Cardiology Defs.' Reply Br., Ex. A 32:7-10.)

Defendant is correct that the standard stated by Dr.
Charash in his deposition is not explicitly contained in either
of the Charash Reports (created on July 23 and October 10 or 15,
2018).  But, on balance, it is clear that Dr. Charash has held
and disclosed to defendants the belief that a cardiologist under

16

similar circumstances should have required an intubation and dialysis to safeguard Mr. Mendoza's heart.

Second, the Court considers the issue of whether Plaintiff has provided evidence of breach of that standard of care. It is possible that Plaintiff has provided that expert testimony. This conclusion requires a more fulsome explanation. Below is Dr. Charash's testimony on the subject:

> Q: . . . You would agree with me, would you not, Doctor, that in your two reports you do not criticize Dr. Zinn or any member of CADV [(The Heart House)] directly?
>
> A: Correct. Because I was not provided any discovery deposition testimony I had no foundation to know who was making clinical decisions.
>
> Q: And is that still true as you sit here today, Doctor?
>
> A: Yes
>
> Q: So as you sit here today you do not have any direct criticisms of Dr. Zinn or any physician at CADV; correct?
>
> A: I don't know their specific role in the case. Whoever was in charge of managing this patient I would be critical of.
>
> Q: Okay. And you know from your review of the records that the attending physicians managing this patient were the internal medicine specialists at Inspira; true?
>
> A: Yes. I mean some of the day-to-day, yes.
>
> Q: Well, you know that they saw him every day; don't you?
>
> A: Yes, I said day-to-day.
>
> Q: Correct. They were managing him day-to-day; correct?
>
> A: Yes.

(Cardiology Defs.' Reply Br., Ex. A 28:14-29:16.)

Two items are important from this testimony.  First, it appears this would modify the standard of care Charash listed above.  It is only in the situation when a cardiologist is also the individual making overall clinical decisions that a cardiologist's standard of care would require considerations of intubation and dialysis.  Second, Charash has apparently not had access[12] – for reasons unknown to the Court – to documents which would allow him to determine who was making clinical decisions.  Without access to those documents, it appears the Court cannot know Charash's final opinion on breach.

At this stage in the proceedings, the summary judgment standard requires this Court to find all reasonable inferences in favor of the non-moving party, here Plaintiff.  Doing so here requires the Court to infer that the Cardiology Defendants <u>may</u> have breached their duty of care to Mr. Mendoza.  The only testimony of record Cardiology Defendants have presented are the Charash Reports and his deposition.  Instead of showing the absence of any factual dispute, it shows the possibility of one.  Cardiology Defendants have not provided any further facts for this Court to consider.[13]  Unfortunately, Cardiology Defendants

---

[12] Cardiology Defendants suggest that Plaintiff's counsel has not taken Zinn's deposition.  (Cardiology Defs.' Reply Br. ¶ 3.)  Why that has not occurred is unknown to the Court.

[13] As this Court found, the Charash Reports do not support finding any breach by the pulmonary or nephrology team.  Charash

have not provided the Court with what it believes is indisputable proof that an internal medicine team – not Cardiology Defendants – dictated the clinical decisions at-issue. If that were the case, the Court might be able to finally determine whether there is a genuine dispute of material facts as to breach.

The third issue is causation; that is, whether Plaintiff has provided expert testimony as to whether the actions of the Cardiology Defendants led to Mr. Mendoza's injuries and allegedly untimely death. The Charash Reports have done so, specifically stating that the breaches outlined "were directly responsible for Mr. Mendoza suffering an otherwise preventable respiratory and cardiac arrest on 3/15/14 and for his suffering permanent anoxic brain injury as a result of the same preventable cardiac arrest." (Pl.'s Opp'n Br., Ex. C 1.) Cardiology Defendants do not present any evidence in opposition.

Cardiology Defendants insist in their reply that Charash's expert opinion here is a legally improper "captain of the ship" argument. The Court disagrees, in part. The Court agrees that one aspect of Cardiology Defendants' argument rings true. It is only if Cardiology Defendants were in charge of day-to-day care

---

is unable to testify to those alleged deviations, as this Court has previously ruled. Cardiology Defendants appear to acknowledge that Charash may testify as to how the intubation and dialysis issue may have impacted cardiac care.

and the nephrology and pulmonary specialists failed to
appropriately treat Mr. Mendoza that Cardiology Defendants could
be said to have breached their duty of care, at least according
to the expert testimony of Charash.  To the extent the
Plaintiff's case is solely based on this argument of vicarious
liability for the failures of other specialists, it must be
dismissed.  Sesselman v. Muhlenberg Hosp., 306 A.2d 474, 476
(N.J. Super. Ct. App. Div. 1973) ("We have expressly rejected
the 'captain of the ship' doctrine as recognized in other
jurisdictions." (citations omitted)).  Accordingly, this theory
will be dismissed to the extent made.

But, Plaintiff disclaims that he relies on this improper
theory of liability.  And, it appears Charash goes beyond this
vicarious liability theory in his testimony and the Charash
Reports.  Charash specifically testifies that if the Cardiology
Defendants were in charge of day-to-day care, it was a breach of
their standard of care under the circumstances not to order both
intubation and dialysis to protect Mr. Mendoza's heart.  This
appears to go beyond holding Cardiology Defendants vicariously
liable for the breach of specialists, as Charash asserts the
Cardiology Defendants had an affirmative duty to order these
procedures.

The cases cited by Cardiology Defendants are inapposite.
The Sesselman decision was based on an erroneous jury

instruction given by the trial court which instructed the jury
that it could find an obstetrician liable for the negligence of
a nurse anesthesiologist in administering anesthetics.  306 A.2d
at 475-77.  The basis: the nurse "did not become the legal
servant or agent of defendant [obstetrician] merely because she
received instructions from him as to the work to be performed."
Id. at 476 (citations omitted).  Here, Plaintiff asserts the
failure of the Cardiology Defendants to give the instruction is
the breach, not the negligence in administering the care.  As
such, inserting the instant facts into the analysis undertaken
in Sesselman would not necessarily require the same outcome.

    Marek v. Professional Health Services, Inc. similarly does
not compel a different outcome here.  432 A.2d 538 (N.J. Super.
Ct. App. Div. 1981).  In deciding a hospital could be held
vicariously liable for the negligence of an independent
contractor – because its duty of care was nondelegable – the
Court stated the following in dicta:

> By today's holding we do not intend to suggest that a
> physician who engages a specialty consultant, such as a
> radiologist, pathologist or anesthesiologist or any
> other, is vicariously liable for the specialist's
> dereliction.

Id. at 543 n.3.  As with Sesselman, Marek does not compel the
Court to dismiss the instant case.

    Even though the Court will not grant summary judgment for
the Cardiology Defendants, it will deny their motion without

prejudice.  The case against the Cardiology Defendants appears
to hinge upon whether Zinn was making clinical decisions or
whether those decisions were made by others.  If it does not
hinge upon that, then it certainly hinges upon whether Charash's
testimony as to standard of care is applicable to all
cardiologists or only those cardiologists that are leading a
treatment group.  Those questions were never asked, nor
answered, because Charash left his deposition early on account
of an emergency and the Cardiology Defendants either chose not
to or could not ask those questions.

The fact that this was not done does not mean that there is
a genuine dispute of material fact.  There are answers to these
questions that Charash can provide.  Or, the Cardiology
Defendants could present documents which would show that Zinn
was not "in charge of managing" Mr. Mendoza during his stay at
IMC.  Those answers and documents are not within the Court's
possession.  The Court cannot rule in favor of the Cardiology
Defendants on summary judgment on the present record.

The parties will be granted leave to conclude expeditiously
the deposition of Charash (if not already completed), perform a
limited deposition on these issues (if necessary), or provide
the Court with the appropriate documentation which shows Charash
is incorrect (if that is truly the case).  After doing so,

Cardiology Defendants may wish to file another motion for summary judgment.

If filed, this motion for summary judgment should address the following issues: (1) citing case law, whether the standard of care expressed by Charash is appropriately limited to cardiology, (2) assuming the veracity of Charash's expressed standard of care – whatever that may truly be, whether it is applicable to the facts of this case, and (3) again assuming the veracity of Charash's expressed standard of care, whether any case law would categorize it as impermissibly imposing vicarious liability.  Accordingly, this Court will deny the Cardiology Defendants' Motion for Summary Judgment, without prejudice.

## CONCLUSION

For the reasons expressed, the Motion to Preclude will be granted, in part, and denied, without prejudice, in part; Plaintiff's Partial Motion for Summary Judgment will be denied, without prejudice; the Motion to Amend will be denied, in part, with prejudice and in part, without prejudice; and the Cardiology Defendants' Motion for Summary Judgment will be denied, without prejudice.

An appropriate Order will be entered.


Date: __April 24th, 2019__            __s/ Noel L. Hillman__
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.