GLADYS MENDOZA, personal
representative of ELIAS
MENDOZA,

         Plaintiff,

    v.

INSPIRA MEDICAL CENTER
VINELAN; SOUTH JERSEY HEALTH
CARE; INSPIRA HEALTH NETWORK,
INC.; ANDREW ZINN, M.D.; THE
HEART HOUSE; NAEEM M. AMIN,
M.D.; and KIDNEY AND
HYPERTENSION SPECIALISTS,
P.A.,

         Defendants.

Civil No. 16-1337 (NLH/KMW)

**OPINION**

**APPEARANCES:**

JAMES R. RADMORE
TWO PENN CENTER, SUITE 312
1500 JFK BOULEVARD
PHILADELPHIA, PA 19102

    *Attorney for Plaintiff Gladys Mendoza.*

THOMAS J. HEAVEY
GROSSMAN & HEAVEY
1608 HIGHWAY 88 WEST, SUITE 200
BRICK, NJ 08724

    *Attorney for Defendants Inspira Medical Center Vineland,*
    *South Jersey Health Care, and Inspira Health Network, Inc.*

DAVID P. BRIGHAM
STAHL & DELAURENTIS
10 E. CLEMENTS BRIDGE ROAD
RUNNEMEDE, NJ 08078

    *Attorney for Andrew Zinn, M.D. and The Heart House.*

**HILLMAN**, District Judge

This is a medical malpractice action brought against a hospital and a cardiologist arising out of their care of Elias Mendoza ("Mendoza") in March 2014. Currently before the Court are six motions:

(1) Inspira Health Network's[1] Motion for Summary Judgment (ECF No. 83);

(2) Dr. Andrew Zinn, M.D. ("Dr. Zinn") and The Heart House's (collectively, the "Cardiology Defendants") Motion for Summary Judgment (ECF No. 86);

(3) Plaintiff Gladys Mendoza's ("Plaintiff") Motion for Partial Summary Judgment as to IHN (ECF No. 87);

(4) Plaintiff's Motion in Limine to Preclude IHN From Relying on the Testimony of Dr. Tobia John Mercuro (ECF No. 104);

(5) Plaintiff's Motion in Limine to Preclude IHN from Relying on Any Expert Testimony at Trial (ECF No. 105); and

(6) The Cardiology Defendants' Motion in Limine to Limit the Trial Testimony of Dr. Bruce D. Charash, M.D. (ECF No. 106).

For the reasons set forth in this Opinion, IHN's Motion for Summary Judgment (ECF No. 83) will be granted; the Cardiology Defendants' Motion for Summary Judgment (ECF No. 86) will be

---

[1] Inspira Health Network, Inc. will be referred to herein as "IHN[.]" Inspira Medical Center Vineland will be referred to herein as "IMC[.]" The term "Inspira Defendants" is used to identify, collectively, IHN and IMC.

granted; Plaintiff's Motion for Partial Summary Judgment (ECF No. 87) will be denied; and the parties' Motions in Limine (ECF Nos. 104, 105, and 106) will be denied as moot.

**BACKGROUND**

The Court takes its facts from the parties' statements of undisputed material fact and this Court's prior decisions in this matter. The Court will note factual disputes where relevant.

## I.   Relevant Factual Background

On March 11, 2014, Mendoza went to the Emergency Room at IMC Vineland complaining of shortness of breath. Shortly thereafter, Mendoza was admitted to the Intensive Care Unit. At the time of his admission, Mendoza had long suffered from end-stage renal disease, insulin dependent diabetes mellitus, coronary artery disease, and congestive heart failure.

Upon admission to IMC, Plaintiff was chiefly cared for by the internal medicine group. (ECF No. 86-6, ¶¶4-7). A chest x-ray taken at IMC appeared to show a fluid overload in Mendoza's lungs. As a result, Mendoza's supervising physicians ordered a cardiology consultation, which was ultimately performed by Dr. Andrew Zinn, M.D. ("Dr. Zinn"), and a nephrology consultation, which was performed by Dr. Naeem M. Amin, M.D. ("Dr. Amin").

On March 15, 2014, Mendoza suffered both a respiratory and cardiac arrest which led to a permanent anoxic brain injury

caused by lack of oxygen. Plaintiff alleges that Mendoza's

medical episode was the result of medical negligence.

Specifically, Plaintiff's case appears to be principally based

on a note entered in the Mendoza's discharge summary, which

states in relevant part:

> HOSPITAL COURSE: Over the course of the patient's
> hospital stay, he tolerated BiPAP and required
> dialysis. Unfortunately[,] he was unable to tolerate
> full treatments and continued to build up fluid. The
> patient unfortunately had some difficulty receiving
> dialysis in our intensive care unit due to staffing
> limitations, which continued to exacerbate his
> continued difficulties with his fluid overload state.

Mr. Mendoza passed away less than a year later from acute

respiratory failure, stemming from a cardiac arrest and coronary

artery disease.

II. Relevant Procedural History

Plaintiff filed an initial complaint on March 9, 2016 (ECF

No. 1), and later filed an amended complaint on March 22, 2016

(ECF No. 5) (the "Amended Complaint"). The Amended Complaint

asserts claims against three sets of Defendants, the Inspira

Defendants and Cardiology Defendants mentioned supra, as well as

Dr. Amin and the Kidney and Hypertension Specialists, P.A. (the

"Nephrology Defendants").

In August 2016, the Nephrology Defendants and IMC moved for

summary judgment, arguing that Plaintiff's failure to comply

with the Affidavit of Merit Statute, N.J. Stat. Ann. § 2A:53A-27

*et seq.*, required dismissal.  This Court granted that motion on March 30, 2017 (the "March 30, 2017 Order").  (ECF No. 31).

Plaintiff timely filed a Motion for Reconsideration, or in the alternative, a motion to certify the March 30, 2017 Order for interlocutory appeal.  (ECF No. 33).  After full briefing, Plaintiff's requests were denied by this Court on November 13, 2017.  (ECF No. 42).

On October 10, 2018, Plaintiff filed a Partial Motion for Summary Judgment solely against IHN (the "October 10 Motion").  (ECF No. 59).  Plaintiff acknowledged that the Court previously dismissed IMC, but argued that IHN is a separate entity with distinct liability not previously resolved by the Court's prior decisions.

On November 1, 2018, the Inspira Defendants filed a Cross-Motion to Amend the caption of this matter along with their opposition to Plaintiff's October 10 Motion for Partial Summary Judgment.  (ECF No. 63).

On January 11, 2019, Cardiology Defendants filed a Motion for Summary Judgment.  (ECF No. 71).  Cardiology Defendants alleged that Plaintiff had not established that Cardiology Defendants deviated from the requisite standard of care.

By Opinion and Order dated April 24, 2019 (ECF No. 76) (the "April 21 Opinion and Order"), this Court granted in part and denied in part the Motion to Preclude filed by the Inspira

Defendants (ECF No. 57); denied Plaintiff's first Motion for Partial Summary Judgment, without prejudice (ECF No. 59); denied the Inspira Defendants' Motion to Amend (ECF No. 63); and denied the Cardiology Defendants' Motion for Summary Judgment, without prejudice (ECF No. 71).

Ultimately, the Court invited the parties to submit supplemental briefing on several issues. See (ECF No. 75 at 10). The Court guided the parties on what it expected in any supplemental filings. Particularly, the Court encouraged IHN to address why – as a matter of law, and, if applicable, as a matter of undisputed fact – direct or vicarious liability claims must be dismissed against IHN to the same extent they were dismissed against IMC. The Court also asked the parties to clarify whether the Affidavit of Merit Statute applies to IHN.

In light of the standard of care offered by Dr. Charash, discussed in further detail infra, of the Cardiology Defendants and Plaintiff, the Court requested clarification on what role, if any, the Cardiology Defendants had in directing care for Mendoza. The Court focused the parties on the issue of whether the Cardiology Defendants had any decision-making role regarding Mendoza's care.

Following issuance of the April 24, 2019 Opinion and Order, the parties filed renewed motions for summary judgment, which are presently before the Court.

III. <u>The Present Motions</u>

As for Plaintiff's claims against the Cardiology Defendants, Plaintiff relies upon the expert reports[2] of Bruce D. Charash, M.D., F.A.C.C. ("Dr. Charash"). This Court previously examined Dr. Charash's expert opinion. The Court summarized Dr. Charash's standard of care as "requir[ing] treating Mr. Mendoza as if he could be impacted by an acute coronary event, which further placed him at risk for acute decompensation." <u>Mendoza v. Inspira Med. Ctr. Vineland, South Jersey Health Care</u>, No. 16-1337, 2019 U.S. Dist. LEXIS 69402, *15 (D.N.J. April 24, 2019) (Hillman, J.) (the "April 24 Opinion"). The Court noted that in Dr. Charash's deposition, he stated: "[f]rom a cardiac point of view this patient was drowning and a cardiologist would have the responsibility to protect the airway and to get the patient dialyzed." <u>Id.</u>

The Court further analyzed Dr. Charash's deposition testimony, which includes the following remarks:

> Q: . . . You would agree with me, would you not, Doctor, that in your two reports you do not criticize Dr. Zinn or any member of CADV [(The Heart House)] directly?
>
> A: Correct. Because I was not provided any discovery deposition testimony I had no foundation to know who was making clinical decisions.
>
> Q: And is that still true as you sit here today, Doctor?

---

[2] Dr. Charash prepared two reports for this case, one on July 23, 2018 and one on October 10 or 15, 2018.

A: Yes

Q: So as you sit here today you do not have any direct criticisms of Dr. Zinn or any physician at CADV; correct?

A: I don't know their specific role in the case. Whoever was in charge of managing this patient I would be critical of.

Q: Okay. And you know from your review of the records that the attending physicians managing this patient were the internal medicine specialists at Inspira; true?

A: Yes. I mean some of the day-to-day, yes.

Q: Well, you know that they saw him every day; don't you?

A: Yes, I said day-to-day.

Q: Correct. They were managing him day-to-day; correct?

A: Yes.

Id. at *15-17.

The Cardiology Defendants produced an affidavit executed by Dr. Zinn addressing the issues this Court previously highlighted in its April 24, 2019 Opinion. According to Dr. Zinn's affidavit, "[a]t Inspira, the admitting physician/group is the coordinator of the patient's care and oversees same throughout his hospitalization, including the determination of what specialty consultations are required and selecting the physicians/groups to perform the specialty consultations." (ECF No. 86-6, ¶3). The record shows that, upon admission to the hospital, Mendoza was chiefly cared for by the internal medicine group and/or the pulmonary consultants. (ECF No. 86-6, ¶¶4-7).

Additionally, IHN was deposed to determine what involvement it had in managing and staffing IMC. IHN produced Dr. Steven Linn, M.D. ("Dr. Linn") as its corporate representative. Dr. Linn testified that he was the Chief Medical Officer at IHN. (ECF No. 87-9 ("Linn Dep.") at 1T6:14-15). Dr. Linn was asked whether he has "any relationship with the scheduling of whether or not there are cardiologists available at Inspira?" (Linn Dep. at 1T7:14-16). Dr. Linn testified that "I make sure that we have cardiology available." (Linn Dep. at 1T7:20-21). In clarifying IHN's role, Dr. Linn later testified that "actually, each group provides continuous coverage. My responsibility is to make sure there's an emergency call list" in case coverage lapses. (Linn Dep. at 1T9:17-22). The remainder of Dr. Linn's deposition addressed the relationship between IHN and the Cardiology Defendants.

With the benefit of the parties' supplemental briefing, the Court will now address the merits of the parties' dispute.

## ANALYSIS

### A.    Subject Matter Jurisdiction

This Court possesses subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332.

### B.    Motion for Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits if any,' . . . demonstrate the absence of a genuine issue of material fact" and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (citing Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."); see Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing" — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." (citing Celotex, 477 U.S. at 325)).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. A "party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . . pleading[s].'" Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). For "the non-moving party[] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Cooper v. Sniezek, 418 F. App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at 322). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and

affirmative evidence that contradict those offered by the moving party. <u>Anderson</u>, 477 U.S. at 257.

## C. Motions Relating to IHN

Plaintiff moves for Partial Summary Judgment against IHN and IHN moves for Summary Judgment against Plaintiff. The parties' disputes distill down to: (1) the nature of any remaining direct claim[3] against IHN as a separate entity[4] and

---

[3] As this Court previously noted, Plaintiff's Amended Complaint is unclear on whether it alleges direct claims against IHN or simply alleges that IHN's liability derives from IMC's. A review of Plaintiff's Amended Complaint suggests that the only claim being advanced is one for derivative liability. To the extent Plaintiff asserts that IHN's liability is derivative of IMC's, that claim fails as this Court already dismissed the inadequate staffing claim against IMC. <u>See</u> <u>Mendoza</u>, 2019 U.S. Dist. LEXIS 69402, at *6 ("The direct and vicarious (to the extent they were asserted) liability claims based on inadequate staffing were also dismissed . . . [on] motion . . . filed by and granted for IMC."); <u>see gen.</u> <u>Grazier v. City of Phila.</u>, 328 F.3d 120, 124 (3d Cir. 2003) (citing <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 89 L. Ed. 2d 806, 106 S. Ct. 1571 (1986)) (where claims against a primary tortfeasor were dismissed, court found that there could be no derivative liability for those same claims). To the extent Plaintiff suggests in her briefing that she is pursuing a direct claim against IHN, such would appear to be an attempt to expand the scope of the Amended Complaint through briefing, a practice long held to be improper. <u>Pennsylvania ex rel. Zimmerman v. Pepsico, Inc.</u>, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs"). Even assuming such a claim is properly before the Court, for the reasons discussed below, it lacks merit.

[4] The parties have spent a substantial portion of their briefs arguing over whether IHN – like IMC – was previously dismissed from this case through the Court's March 30, 2017 Opinion. Such arguments, however, do little to address the substantive issues remaining before this Court, and instead, serve only as distraction. Certainly, both sides have contributed to any

alleged tortfeasor, (2) whether Plaintiff was required to file

an Affidavit of Merit to proceed with the inadequate staffing

claim against IHN, and (3) whether the evidence before the Court

is sufficient to permit Plaintiff's inadequate staffing claim to

proceed.  For the reasons that follow, the Court concludes that,

whether or not an Affidavit of Merit is required, Plaintiff's

claim against IHN fails as a matter of law.

> i.  <u>Whether Plaintiff Was Required to File an Affidavit of
> Merit to Proceed Against IHN</u>

IHN argues that Plaintiff was required to submit an

Affidavit of Merit in support of its claim and failed to do so,

which requires dismissal.  Plaintiff argues that, because IHN is

not a "health care facility" as that term is defined by the

Affidavit of Merit Statute, Plaintiff's case against IHN may

proceed without need for an Affidavit of Merit.

The Affidavit of Merit Statute provides:

> In any action for damages for personal injuries,
> wrongful death or property damage resulting from an
> alleged act of malpractice or negligence by a licensed
> person in his profession or occupation, the plaintiff
> shall, within 60 days following the date of filing of
> the answer to the complaint by the defendant, provide
> each defendant with an affidavit of an appropriate
> licensed person that there exists a reasonable
> probability that the care, skill or knowledge

---

confusion that may exist.  <u>See</u> <u>Mendoza</u>, 2019 U.S. Dist. LEXIS
69402, at *8-9 ("Clearly, precision has been lacking by
both Plaintiff and [the Inspira Defendants].").  As explained in
this Opinion, the issue is not whether IHN is "in the case."
The issue is whether Plaintiff has a remaining and viable claim,
both procedurally and substantive, against that defendant.

> exercised or exhibited in the treatment, practice or
> work that is the subject of the complaint, fell
> outside acceptable professional or occupational
> standards or treatment practices. The court may grant
> no more than one additional period, not to exceed 60
> days, to file the affidavit pursuant to this section,
> upon a finding of good cause.

N.J. Stat. § 2A:53A-27.

Generally, New Jersey courts consider three elements when analyzing whether the statute applies to a particular claim: (1) whether the action is for "damages for personal injuries, wrongful death or property damage" (nature of injury); (2) whether the action is for "malpractice or negligence" (cause of action); and (3) whether the "care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint [] fell outside acceptable professional or occupational standards or treatment practices" (standard of care). See Couri v. Gardner, 801 A.2d 1134, 1137 (2002) (quoting N.J. Stat. Ann. § 2A:53A-27).

It appears that all three of these inquiries are satisfied in this case. Certainly, Plaintiff's allegations arise from damages for personal injuries. It is also clear that Plaintiff's claim sounds in medical negligence or malpractice. See (ECF No. 5, ¶11). While Plaintiff's Amended Complaint does not fully flesh out the scope of her inadequate staffing claim, the Amended Complaint's allegations provide context as to Plaintiff's allegations. Specifically, as against IHN,

14

Plaintiff's Amended Complaint alleges that Mendoza was "negligently treated, resulting in brain damage, inability to ambulate, as well as damage to his heart . . . ." (ECF No. 5, ¶11). The Amended Complaint also alleges that IHN is liable "as a matter of corporate liability" for the harm Mendoza suffered. (ECF No. 5, ¶¶41-43). Based upon those claims, the Court concludes – as it did previously – that Plaintiff's claim is best characterized as one sounding in medical negligence or medical malpractice. As this Court previously held, "[i]t is not within a lay person's knowledge as to what an adequately staffed intensive care unit looks like." Mendoza, 2017 U.S. Dist. LEXIS 186755, at *12. As this Court observed, "decisions concerning staffing involve specialized knowledge" and "require explanation by an expert." Id. For that reason, this Court previously concluded that an Affidavit of Merit is required for the pursuit of such claims. Id. at 13.

Nonetheless, Plaintiff maintains that because IHN is not a "licensed person" under the Affidavit of Merit Statute, no Affidavit of Merit is required. The statute provides that a "licensed person," in the context of medical negligence claims includes a person licensed as "a physician in the practice of medicine or surgery" and "a health care facility[.]" See N.J. Stat. Ann. § 2A:53A-26(f)-(m).

As relevant to this matter, the term "health care facility"

means:

> the facility or institution, whether public or
> private, that is engaged principally in providing
> services for health maintenance organizations,
> diagnosis, or treatment of human disease, pain,
> injury, deformity, or physical condition, including,
> but not limited to, a general hospital, special
> hospital, mental hospital, public health center,
> diagnostic center, treatment center, rehabilitation
> center, extended care facility, skilled nursing home,
> nursing home, intermediate care facility, tuberculosis
> hospital, chronic disease hospital, maternity
> hospital, outpatient clinic, dispensary, home health
> care agency, residential health care facility,
> dementia care home, and bioanalytical laboratory
> (except as specifically excluded hereunder), or
> central services facility serving one or more such
> institutions but excluding institutions that provide
> healing solely by prayer and excluding such
> bioanalytical laboratories as are independently owned
> and operated, and are not owned, operated, managed, or
> controlled, in whole or in part, directly or
> indirectly by any one or more health care facilities,
> and the predominant source of business of which is not
> by contract with health care facilities within the
> State of New Jersey and which solicit or accept
> specimens and operate predominantly in interstate
> commerce.

N.J. Stat. Ann. § 26:2H-2.

It appears IHN does not fall neatly within the

definition of "licensed person."  Such would suggest that

an Affidavit of Merit would not be required to proceed

against IHN.  That said, a more thorough review of New

Jersey precedent on this topic suggests that the inquiry

contains another layer.

16

Pursuant to relatively recent precedent from the
Superior Court of New Jersey, Appellate Division, it
appears that in certain circumstances, New Jersey requires
an Affidavit of Merit be filed in order to proceed against
"non-licensed persons" where the relationship between the
licensed person and the non-licensed person is uniquely
close, and the underlying claims sound in professional
negligence or malpractice.  See McCormick v. State, 144
A.3d 1260, 1266 (N.J. Sup. Ct. App. Div. 2016).  As New
Jersey State Courts have explained, the purpose of this
rule is to prevent plaintiffs from dodging the Affidavit of
Merit requirement by simply suing non-licensed entities for
conduct otherwise covered by the Affidavit of Merit
Statute.  See Id.

While examples are limited, McCormick provides a
helpful discussion of the issue.  In McCormick, the
plaintiff alleged that he received inadequate medical care
at UMDNJ and Rutgers University Correctional Health Care
while incarcerated in South Woods State Prison.  McCormick,
144 A.3d at 1264.  Instead of suing the medical providers
directly, for which the plaintiff certainly would have
required an Affidavit of Merit, the plaintiff brought an
action only against South Woods State Prison alleging that
the medical staff had committed malpractice in treating

17

him.  Id.  The prison moved to dismiss the plaintiff's complaint on the ground that an Affidavit of Merit had not been filed against it.  Id.  The plaintiff argued that no Affidavit of Merit was necessary as the prison was not a "licensed person" or "licensed health care facility" within the plain meaning of the Affidavit of Merit Statute.  Id. at 1264-65.

The Appellate Division discarded the plaintiff's argument, finding that it was "based on a hyper-literal reading of the AOM statute" and does not "excuse plaintiff from his failure to supply a proper affidavit to support his claims that fundamentally are allegations of medical negligence."  Id. at 1265.  The Appellate Division concluded that litigants cannot avoid the Affidavit of Merit Statue in medical negligence cases by simply choosing to sue an entity that does not fall within the scope of the statute.  See Id. at 1265 (a plaintiff "cannot avoid the important screening mechanism of the AOM statute by suing only the . . . entity that procured the services of the individual health care professionals who worked at the prison").

In McCormick, the Appellate Division instructed that the proper focus in determining whether an Affidavit of Merit is necessary is on "the nature of the underlying

conduct of the medical personnel who allegedly harmed the injured plaintiff." Id. at 1266. "A plaintiff cannot circumvent the intent of the Legislature by suing only the . . . entity." Id.

While IHN may not be a licensed person under the statute, McCormick counsels towards barring Plaintiff's claim against IHN. Plaintiff's Amended Complaint confirms that the purported-inadequate staffing claim is just a modified presentation of the medical malpractice and medical negligence claims. Plaintiff attempted to proceed on the exact same theory against IMC and this Court dismissed that claim for want of an Affidavit of Merit. It would be absurd to permit such a claim to proceed against IHN without an Affidavit of Merit where this Court already concluded that the same claim must fail against IMC. This Court reads McCormick to support just that conclusion. Nonetheless, the Court need not definitively decide whether an Affidavit of Merit was required as the record lacks evidence that IHN had any responsibility for staffing IMC's nephrology department.

ii. <u>Whether There is Enough Evidence to Survive Summary Judgment</u>

IHN argues that Plaintiff fails to present sufficient evidence in support of her claim to survive summary judgment.

Plaintiff argues that ample factual and expert evidence exists to grant summary judgment in her favor.

As previously discussed, Plaintiff's theory appears to be that IHN is directly liable for Mendoza's injuries because IHN failed to properly staff IMC's dialysis unit. See (ECF No. 90 at 5; ECF No. 5 at ¶¶9-13; Docket 87 at ¶10).

Plaintiff's case hinges on a note entered in Mendoza's discharge summary:

> HOSPITAL COURSE: Over the course of the patient's hospital stay, he tolerated BiPAP and required dialysis. Unfortunately[,] he was unable to tolerate full treatments and continued to build up fluid. The patient unfortunately had some difficulty receiving dialysis in our intensive care unit due to staffing limitations, which continued to exacerbate his continued difficulties with his fluid overload state.

Plaintiff points to the testimony of IHN (through its corporate designee Dr. Linn) for support. Plaintiff argues that IHN's testimony proves that IHN was responsible for staffing the nephrology department at IMC. See (ECF No. 87-1 at 7-8). A review of Dr. Linn's deposition proves otherwise.

IHN was deposed solely on the basis of its involvement with cardiology staffing at IMC. Colloquy amongst counsel at the outset of the deposition underscores that point. Plaintiff's counsel notes for the record that Dr. Linn's deposition was limited to the "extent of the relationship between Inspira and Dr. Zinn." (ECF No.87-9 ("Linn Dep.") at 1T5:1-5).

Dr. Linn testified that he was the Chief Medical Officer at IHN. (Linn Dep. at 1T6:14-15). Dr. Linn was asked whether he has "any relationship with the scheduling of whether or not there are cardiologists available at Inspira[,]" to which Dr. Linn responded, "I make sure that we have cardiology available."[5] (Linn Dep. at 1T7:14-21). In clarifying IHN's role, Dr. Linn later testified that "actually, each group provides continuous coverage. My responsibility is to make sure there's an emergency call list" in case coverage lapses. (Linn Dep. at 1T9:17-22). The questioning continued regarding the relationship between IHN and the Cardiology Defendants: Plaintiff inquired about whether IHN ever spoke to the Cardiology Defendants about Mendoza's care, to which IHN indicated it had not. (Linn Dep. at 1T11:19-21). IHN testified it had not reviewed the records for care provided to Mendoza by the Cardiology Defendants. (Linn Dep. at 1T15:20-22). Plaintiff also inquired about staffing policies regarding "staffing of cardiologists[.]" (Linn Dep. at 1T14:18-20).

What Plaintiff did not do is obtain proof that IHN had any responsibilities relating to the staffing of the nephrology group at IMC. While Plaintiff suggests that "there is no reason

---

[5] While Dr. Linn testified on behalf of IHN as a corporate designee, the questions and answers appearing in the transcript leave unclear whether Dr. Linn was testifying in his own capacity, or in his capacity as a corporate designee.

to believe the procedures would be different than those testified to as to cardiology[,]" (ECF No. 87, ¶21), mere speculation is insufficient to survive summary judgment. <u>See</u> <u>Brown v. R.R. Grp. LLC</u>, 350 F. Supp. 3d 300, 310 (D.N.J. 2018) (Hillman, J.) ("Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.") (citations omitted).

Simply put, the record is entirely devoid of evidence suggesting IHN had any involvement in staffing the nephrology group at IMC. As such, Plaintiff's inadequate staffing claim will be dismissed. The Court notes for clarity that, in disposing of this claim, the Court has resolved all claims against the Inspira Defendants.

## D. Motions Relating to the Cardiology Defendants

The Cardiology Defendants argue summary judgment should be granted in their favor because Plaintiff has not produced evidence demonstrating that the Cardiology Defendants breached their standard of care. The Cardiology Defendants particularly argue that, when the standard of care offered Dr. Charash is applied to the undisputed material facts, it becomes clear that the Cardiology Defendants did not commit malpractice.

Plaintiff argues that Dr. Charash offers sufficient testimony regarding the Cardiology Defendants' deviation from

the standard of care, and that sufficient factual disputes exist to permit her case to proceed.

To prove medical malpractice, a plaintiff must prove, through expert testimony: "(1) the applicable standard of care . . . ; (2) a deviation from that standard of care . . . ; and (3) that the deviation proximately caused the injury . . . ." Gardner v. Pawliw, 696 A.2d 599, 608 (N.J. 1997) (citations omitted).  In other words, the law imposes upon a doctor:

> the duty to exercise in the treatment of his patient the degree of care, knowledge and skill ordinarily possessed and exercised in similar situations by the average member of the profession practicing in his field. Failure to have and to use such skill and care toward the patient as a result of which injury or damage results constitutes negligence.

Schueler v. Strelinger, 204 A.2d 577, 584 (N.J. 1964).  "Absent competent expert proof of these three elements, the case is not sufficient for determination by the jury."  Rosenberg v. Tavorath, 800 A.2d 216, 225 (N.J. Super. Ct. App. Div. 2002) (citing Sanzari v. Rosenfeld, 167 A.2d 625, 628 (N.J. 1961)). The Cardiology Defendants focus almost exclusively on the second element of the malpractice standard: whether a deviation of the standard of care occurred.

This Court previously examined Dr. Charash's testimony regarding the standard of care required of the Cardiology Defendants.  The Court recognized Dr. Charash's opinion that "the standard of care required treating Mr. Mendoza as if he

could be impacted by an acute coronary event, which further placed him at risk for acute decompensation." <u>Mendoza</u>, 2019 U.S. Dist. LEXIS 69402, at *15.

As this Court previously wrote, Dr. Charash's deposition testimony appears to modify the proposed standard of care:

> Q: . . . You would agree with me, would you not, Doctor, that in your two reports you do not criticize Dr. Zinn or any member of CADV [(The Heart House)] directly?
>
> A: Correct.  Because I was not provided any discovery deposition testimony I had no foundation to know who was making clinical decisions.
>
> Q: And is that still true as you sit here today, Doctor?
>
> A: Yes
>
> Q: So as you sit here today you do not have any direct criticisms of Dr. Zinn or any physician at CADV; correct?
>
> A: I don't know their specific role in the case.  Whoever was in charge of managing this patient I would be critical of.
>
> Q: Okay.  And you know from your review of the records that the attending physicians managing this patient were the internal medicine specialists at Inspira; true?
>
> A: Yes.  I mean some of the day-to-day, yes.
>
> Q: Well, you know that they saw him every day; don't you?
>
> A: Yes, I said day-to-day.
>
> Q: Correct.  They were managing him day-to-day; correct?
>
> A: Yes.

<u>Id.</u> at *15-17.

As such, this Court previously concluded that "[i]t is only in the situation when a cardiologist is also the individual

making overall clinical decisions that a cardiologist's standard of care would require considerations of intubation and dialysis[.]" Id. at *16-17.

This Court suggested that if Cardiology Defendants could present indisputable proof that an internal medicine team – not Cardiology Defendants – dictated the clinical decisions at issue, that dismissal might be appropriate. Id. at *17-18 ("Cardiology Defendants have not provided the Court with what it believes is indisputable proof that an internal medicine team - not Cardiology Defendants - dictated the clinical decisions at-issue. If that were the case, the Court might be able to finally determine whether there is a genuine dispute of material facts as to breach."). As the Court wrote, "[i]t is only if Cardiology Defendants were in charge of day-to-day care and the nephrology and pulmonary specialists failed to appropriately treat Mr. Mendoza that Cardiology Defendants could be said to have breached their duty of care, at least according to the expert testimony of Charash." Id. at *18-19. As such, this Court explained, "[t]he case against the Cardiology Defendants appears to hinge upon whether Zinn was making clinical decisions or whether those decisions were made by others." Id. at *21.

Cardiology Defendants have presented evidence that they were not making clinical decisions relating to Mendoza's care, but rather served as consultants for others who were.

Cardiology Defendants produced an affidavit of Dr. Zinn addressing the issues this Court previously highlighted in its April 24, 2019 Opinion. According to Dr. Zinn's affidavit, "[a]t Inspira, the admitting physician/group is the coordinator of the patient's care and oversees same throughout his hospitalization, including the determination of what specialty consultations are required and selecting the physicians/groups to perform the specialty consultations." (ECF No. 86-6, ¶3). The record shows that, upon admission to the hospital, Mendoza was chiefly cared for by the internal medicine group and/or the pulmonary consultants, not the Cardiology Defendants. (ECF No. 86-6, ¶¶4-7).

Dr. Zinn certifies that "[w]ith respect to hemodialysis, I do not have the training or credentials to perform the procedure. As a consulting cardiologist I do not have authority to order that hemodialysis be performed. Nor can I replace the nephrologist or the nephrology group selected by the attending physician with another nephrologist or nephrology group." (ECF No. 86-6, ¶5).

Plaintiff has not identified any competing evidence. Therefore, the only evidence before this Court is that the Cardiology Defendants were not making clinical decisions as to Mendoza's care; instead, they were simply consulting at the behest of other physicians. Under the standard of care dictated

by Plaintiff's own expert, Plaintiff cannot sustain the current action against the Cardiology Defendants.  To paraphrase the words of their own expert, Plaintiff has offered no evidence that the Cardiology Defendants did anything wrong.  As such, the Court will grant the Cardiology Defendants' Motion for Summary Judgment.

## CONCLUSION

For the reasons expressed above, Defendants' Motions for Summary Judgment (ECF Nos. 83 and 86) will be granted. Plaintiff's Motion for Partial Summary Judgment (ECF No. 87) will be denied.  Because resolution of the pending motions resolves this matter entirely, the parties' Motions in Limine (Docket Nos. 104, 105, and 106) will be denied as moot.

An appropriate Order will be entered.


Date:  October 17, 2019              s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.